Michael H. Gold
295 Madison Avenue, 12th Flr
New York, New York
10017
Tel (212) 838 0699


December 2, 2020


Hon. Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*Re: United States v. Goklu, 19 CR 386 (PKC)*

Dear Judge Chen;

      I am writing at the Court's direction to clarify and respond to specific questions raised in regard to the defendant's bail modification request. Even though the same modification was sought and denied a year ago, I should have realized how complex an oral video application would be and, instead, filed an initial application in writing. I appreciate the Court's forbearance.

      While I will address the Court's inquiries, I respectfully withdraw the current application and request leave to renew if and when appropriate. Mr. Dogan Kimilli, Mr. Goklu's cousin and prospective employer, has been unreachable to Pretrial as well as me because he is far upstate caring for his father who has a severe case of Covid 19. He has no cell service and, for purposes of this proceeding, has no plans now or in the immediate future to buy cars which, as will be explained below, negates any job opportunities for Mr. Goklu. Therefore, we withdraw the modification application and request cancellation of the December 4, 2020 appearance.

### The Defendant's Income Prior to Arrest and Drivers License

      As stated at the hearing, Mr. Goklu's car was forfeited as part of the instant case and his Taxi and Limousine license was revoked. Therefore, he may not engage in any commercial public livery and has no further income from this business. In addition, prior to his arrest, he earned a significant amount of money by purchasing machinery from China, for which he declared and paid full import duties and complied with all Customs requirements. He then resold these items on Ebay. All proof of purchases, payments and resale are electronically recorded and were processed through American banks.

However, he no longer has access to this business. The Chinese sellers would only accept bitcoin as payment. Once Mr. Goklu was arrested and prohibited from engaging in bitcoin transactions, he could no longer buy the machinery and that source of income completely and immediately ceased.

Since his arrest, Mr. Goklu has relied primarily on savings and a substantial loan from his sister, $20,000.00, to survive. The pandemic has had disastrous economic implications for most everyone, including him. He has delivered pizza for tips and meals, sold personal items and, on a few occasions, has purchased distressed and unusable cars at NYC Police auctions that he refurbished and resold. One such purchase and sale resulted in his current driver's license suspension for failure to pay insurance. License plates for sold vehicles must be returned within a proscribed period of time in order to avoid license suspension for non payment of insurance. He has tried on multiple occasions in person to return the license plates from a sold car but the DMV had limited capacity to process this type of transaction and the offices he went to would not accept them. Consequently, since he stopped paying insurance on the already sold vehicle and didn't return the plates, the DMV records still reflect his ownership of a now uninsured vehicle. Accordingly, his license was suspended.

Mr. Goklu fully understands that until this license issue is resolved, the Court would not grant any modification even if all other conditions were satisfied. He believes he can resolve it within a few weeks.

## **Employment Proposal**

Mr. Kimilli, his cousin and prospective employer, owns two companies; The first, which is the larger and provides the bulk of his income, is Tuna LLC, a property management firm. This is the company noted in the original pretrial report. I cannot answer whether he spoke to the officer about both companies and only one was included in the report or if he simply discussed Tuna LLC since it is his primary business. Of course, he has never seen the report to verify its accuracy.

In addition to Tuna LLC. , Mr. Kimilli owns a car resale business, Tuana Transportation for which he proposes to hire Mr. Goklu. In essence, Mr. Kimilli identifies inoperable cars for auction in New York, New Jersey, Pennsylvania and sometimes in New England states and purchases them for repair and resale. Mr. Goklu, as explained above, engaged in the same business on a few occasions and only in New York City. Mr. Kimilli purchases up to three cars at a time and needs drivers to transport the vehicles back to New York. The drivers do not need a special commercial license since the truck used to tow the cars is under 26,000 pounds and the car towed is under 10,000 pounds. It is done with a pickup truck. Any active drivers license suffices.

Since it's never clear which cars he will succeed in buying at auction, there is no set schedule for pickups. Some weeks, no cars are purchased at all. In others, he has purchased cars on as many as four days. Generally, the driver is notified 24 hours in advance when the car will be ready and then proceed accordingly. Mr. Goklu would report directly to and receive instructions from Mr. Kimilli.

Mr. Goklu would leave and return the same day. It should be noted that under his current restrictions, Mr. Goklu is already permitted to leave his home without any electronic surveillance from 10:00 AM-9:00 PM. The only difference is that under the modification proposal he would be gainfully employed and would likely leave the state on most work days. Simply put, if he were inclined to flee, he is currently unmonitored for 11 hours and would have the same "head start" if this application were granted.

To be clear, Mr. Kimilli confirmed the above information to me on several occasions in court, in my office and on the phone. However, I did not speak to him recently to reconfirm but I have no reason to believe anything has changed. I will endeavor to speak with him prior to any future application.

Mr. Goklu was advised by pretrial that there are certain apps available on Iphones and Android phones that enable GPS tracking. Mr. Goklu would consent to the installation of the app and monitoring along with phone calls to him while he is traveling in order to ensure that he is in possession of the phone during those days he worked. This would actually provide more information as to his whereabouts than the current conditions. As well, we have no objection to the Court's suggestion of computer monitoring.

We appreciate the Court's and the government's concern about him engaging in illegal activities if permitted to travel. Obviously, he denies any such intent. Since May, 2019, Mr. Goklu has been fully compliant with his terms of release and not been rearrested or otherwise violated the trust the Court placed in him. As stated earlier, his current conditions permit him being out of the home for 11 hours a day. If he were so inclined, he has the same ability and opportunity now to travel to nearby states to conduct illegal bitcoin sales as he would under the proposed revisions. He hasn't done so before and pledges not to in the future.

Mr. Goklu lives with his wife and 6 month old baby. His wife does not work outside the home and he is the sole source of income for the family. The sole purpose of the modification application was to legally support his family.

Again, given the status of his license and my inability to confirm in good faith when the job will be available I withdraw the bail modification request at this time. As well, we see no need for the next status conference and ask that it be canceled,

Thank you for your consideration of this application.


Respectfully,


Michael H. Gold