1      UNITED STATES DISTRICT COURT
       EASTERN DISTRICT OF NEW YORK
2
- - - - - - - - - - - - - - - -X
3   UNITED STATES OF AMERICA,      : 19-CR-386 (PKC)
                                   :
4            Plaintiff,            :
                                   : United States Courthouse
5        -against-                 : Brooklyn, New York
                                   :
6   MUSTAFA GOKLU,                  :
                                   : Monday, November 25, 2019
7            Defendant.            : 2:00 p.m.
- - - - - - - - - - - - - - - -X
8

9

10    TRANSCRIPT OF CRIMINAL CAUSE FOR A STATUS CONFERENCE
         BEFORE THE HONORABLE PAMELA K. CHEN
11            UNITED STATES DISTRICT JUDGE

12

13                A P P E A R A N C E S :

14  For the Government:        RICHARD P. DONOGHUE, ESQ.
                               United States Attorney
15                             Eastern District of New York
                               271 Cadman Plaza East
16                             Brooklyn, New York 11201
                               BY:  FRANCISCO NAVARRO, ESQ.
17                                   Assistant United States Attorney

18   For the Defendant:        MICHAEL H. GOLD, ESQ.
                               33 Hunting Ridge Road
19                             Chappaqua, New York 10514

20

21

22  Court Reporter:           DAVID R. ROY, RPR
                               225 Cadman Plaza East
23                             Brooklyn, New York 11201
                               drroyofcr@gmail.com
24
Proceedings recorded by Stenographic machine shorthand,
25  transcript produced by Computer-Assisted Transcription.

1           (In open court.)

2           THE COURTROOM DEPUTY:  Criminal cause for status

3    conference, Docket 19-CR-386, United States versus Goklu.

4           Will the parties please state their appearances

5    for the record.

6           MR. NAVARRO:  Good afternoon, Your Honor.

7    Francisco Navarro for the Government.

8           THE COURT:  Good afternoon.

9           MR. GOLD:  For the defendant, Michael Gold.  Good

10   afternoon, Your Honor.

11          THE COURT:  Good afternoon, Mr. Gold; and to you,

12   Mr. Goklu.

13          And then we will have our interpreter state her

14   name for the record and be sworn in.

15          THE INTERPRETER:  Yes, Ecegul "A.J." Elterman.

16          THE COURTROOM DEPUTY:  Will you please raise your

17   right hand.

18          (Interpreter sworn.)

19          THE COURTROOM DEPUTY:  Thank you.

20          THE COURT:  Thank you very much and good afternoon

21   to you.

22          THE INTERPRETER:  Good afternoon.

23          THE COURT:  All right.  So we are here for a

24   status conference.

25          Mr. Navarro, where does the case stand at the

1   moment?

2          MR. NAVARRO:  Your Honor, the Government has

3   provided discovery over to Mr. Gold.  Mr. Gold came in as

4   substitute counsel for Federal Defenders.  I believe

5   Mr. Gold has reviewed it.  We have exchanged -- I don't want

6   to say offers, but we have exchanged ideas on what a plea

7   would look like, Your Honor.

8          THE COURT:  Okay.

9          MR. NAVARRO:  And right now, the ball is in my

10  court to review Mr. Gold's latest proposal to see whether it

11  is acceptable to the Government.  And I would ask Your Honor

12  for 30 days to be able to see where we were at that point.

13  You know, I think we will have a good idea by then where we

14  are going.

15         THE COURT:  Does that sound right?

16         MR. GOLD:  That is correct, Your Honor.

17         THE COURT:  Okay.

18         MR. GOLD:  And we had, before Your Honor took the

19  bench just a little conference, and January 8th at 12:45

20  seemed to work for all parties.

21         THE COURT:  All right.  That sounds fine.  We will

22  put this over until January 8th.

23         Did you say 12:30?

24         MR. GOLD:  12:45.

25         THE COURT:  Okay.  And I will exclude the time

1  from now until then to allow the parties to continue their

2  plea negotiations.

3           Did you also have an application, Mr. Gold?

4           MR. GOLD:  I did, Your Honor.

5           THE COURT:  Okay.

6           MR. GOLD:  It's for a modification of bail.

7           THE COURT:  Okay.

8           MR. GOLD:  Mr. Goklu is currently on bail.  He has

9  a monitor and he is on a curfew that requires him to be home

10  from 10:00 in the evening until 9:00 in the morning.

11           THE COURT:  Okay.

12           MR. GOLD:  Just so the Court knows, I sent the

13  EM unit, electronic monitoring unit, Ms. Carlson, two emails

14  about today's application notifying her of the time and the

15  substance.

16           THE COURT:  Okay.

17           MR. GOLD:  So they were aware of that.

18           What we are proposing in exchange for the addition

19  of two new suretors who are present in court now in the

20  audience, and I am happy, of course, to call them up as

21  needed --

22           THE COURT:  Okay.

23           MR. GOLD:  -- we asking for this curfew being

24  lifted, not the monitor, just the curfew itself.  His

25  current suretor, who is also present in court, is the owner

1   of a trucking company that delivers cars to and from

2   auctions and has offered Mr. Goklu a job driving for him,

3   which frequently involves nighttime driving in the tri-state

4   area, which is what is precipitating this application.

5                THE COURT:  Okay.

6                MR. GOLD:  So actually, if I may change one thing

7   I said earlier?  The current bail conditions, I believe,

8   also limit him to the Eastern District and Manhattan.  So I

9   would also, if the Court would consider, ask that if you are

10  inclined to grant this application, he be permitted to drive

11  in the tri-state area, because that is where many of his

12  customers and auctions need these cars.

13               And I can tell you more about the suretors, if you

14  would like?

15               THE COURT:  Okay.  One second:  When you say tri

16  state, you are referring to New Jersey, New York and --

17               MR. GOLD:  Pennsylvania --

18               THE COURT:  -- Pennsylvania?

19               MR. GOLD:  -- and Connecticut.

20               THE COURT:  Okay.  So four different states?

21               MR. GOLD:  Yeah.

22               THE COURT:  Okay.

23               MR. GOLD:  I don't count so well.  That's why I'm

24  a lawyer.

25               THE COURT:  All right.

1          MR. GOLD:  What can I say?

2          THE COURT:  The suretor is also going to be his

3     boss in effect, then, for this business?

4          MR. GOLD:  That is correct.

5          THE COURT:  And they are transporting cars for

6     people who are buying them or for what purpose?

7          MR. GOLD:  Oh, people buying from the auction.

8          THE COURT:  Okay.

9          MR. GOLD:  And people who are selling to an

10    auction, or have sold to an auction and have to have the

11    cars delivered to wherever.

12         THE COURT:  And these have to be delivered at

13    night because?

14         MR. GOLD:  I'm just told it's a 24-hour

15    business --

16         THE COURT:  Okay.

17         MR. GOLD:  -- and cars are going out all the time.

18    It's not that he necessarily would be -- it's not like he's

19    going to have a shift --

20         THE COURT:  Right.

21         MR. GOLD:  -- from, you know, 10:00 at night until

22    4:00 in the morning.  But as I understand it, frequently

23    these deliveries are made in the evening or early morning

24    hours.

25         THE COURT:  I mean, I certainly understand for

1    efficiency reasons why one might do that, to avoid traffic

2    and the like.  But given his circumstances, I am wondering

3    if there is a way he could do this work in the daytime?

4    Because there is obviously some concern about letting him

5    drive within a four-state area.

6            MR. GOLD:  I understand.

7            THE COURT:  To the extent the Government has

8    concerns about him fleeing, that would certainly give him a

9    head start, if that is what he is doing.  And doing that

10   late at night would compound the difficulty, I think, of

11   detecting and pursuing the defendant if the Government were

12   concerned about his flight.

13           But let me turn to the Government for a moment and

14   see what their view is.  Honestly, I don't know enough about

15   the case to know if this is a genuine issue.

16           MR. NAVARRO:  Thank you, Your Honor.  It is an

17   issue on multiple fronts.

18           And to give Your Honor just a brief background on

19   the case --

20           THE COURT:  Okay.

21           MR. NAVARRO:  -- this is a money laundering case,

22   Your Honor, where the defendant is alleged to have engaged

23   in multiple transactions with undercover DEA agents to

24   launder narcotics proceeds.

25           THE COURT:  Okay.

1      MR. NAVARRO:  In addition to that, the DEA also

2  surveilled him doing money laundering transactions with

3  other individuals, both dropping off and picking up money

4  always in his car at various points in both the Eastern and

5  the Southern District of New York.

6          He was arrested, and then shortly after he was

7  arrest, the Government became concerned because he started

8  changing the passwords to a lot of his accounts.  So there

9  was concern that he was potentially either altering evidence

10  or in some way making it inaccessible.

11          Based on all of those circumstances around his

12  arrest, the Government asked for electron monitoring and

13  home detention out of the gate.  Judge Kuo granted that.

14          She also, I believe at the time -- I don't have

15  the Pretrial Services report in front of me, but I believe

16  he was working as a driver in some other capacity for

17  gainful employment, as well as the money laundering.

18  Because of the nature of the allegations, that he was doing

19  everything in his car, Judge Kuo ordered that he not be

20  permitted to drive doing that job either.  So --

21          THE COURT:  So he's prohibited from being a driver

22  currently?

23          MR. NAVARRO:  He was at the time, Your Honor.

24  Then what happened was, he asked for a modification to be

25  permitted to travel to the Southern District of New York.

1    The Government consented to that.  He represented that he

2    needed to go to Manhattan for medical visits.  But --

3            THE COURT:  By car or...

4            MR. NAVARRO:  Well, that's what I was getting at,

5    Your Honor.

6            THE COURT:  Okay.

7            MR. NAVARRO:  When that modification was made, the

8    order stayed in that he was not to drive.  And so that

9    remained the status quo through today.

10           And, Your Honor, there really are no changed

11   circumstances, other than the employment.  But the concern

12   of the Government is that it is at night.  It does involve a

13   motor vehicle going to many different locations.  And it

14   also involves the same mode that he was using to commit the

15   crime before.  So this type of pickup and delivery to

16   wherever or wherever the clients need, certainly allows him

17   to continue any money laundering activities that he may be

18   involved in.

19           THE COURT:  Okay.

20           MR. NAVARRO:  And I want to be clear, the

21   Government doesn't have any evidence that he is involved,

22   but it certainly --

23           THE COURT:  Go slower.

24           MR. NAVARRO:  -- gives him the opportunity.

25           THE COURT:  Okay.  What is the defendant doing now

1   for work, Mr. Gold?

2           MR. GOLD:  He's fundamentally unemployed,

3   Your Honor, for medical issues for quite some time.

4           THE COURT:  All right.

5           MR. GOLD:  Which, I believe, have dissipated.  But

6   I don't believe he's employed at the moment.

7           THE COURT:  Okay.

8           MR. GOLD:  He's working off of, basically,

9   donations from his family and having exhausted most, if not

10  all, of his savings.

11          THE COURT:  Okay.

12          All right.  And does Pretrial Service have a view

13  on this application, and do you know what the application

14  is?

15          MS. CARLSON:  Amanda Carlson for Pretrial

16  Services.  Good afternoon.

17          I've just been informed of the application.  Yes,

18  that the defendant would like to be removed from location

19  monitoring, I gather, so I --

20          THE COURT:  No.  He wants to stay on location

21  monitoring, but he wants to have the 10:00 p.m. to 9:00 a.m.

22  curfew lifted and allow him to be and to drive to a

23  four-state region, including New York, New Jersey,

24  Pennsylvania, and --

25          MR. GOLD:  Connecticut.

1      THE COURT:  -- Connecticut for purposes of

2  transporting cars or delivering cars as part of an auction

3  service.  And I gather one of the proposed suretors would be

4  his boss in this endeavor.

5      The Government -- you caught the tail end of what

6  the Government said.  Their concern is that this would

7  basically give him the means to carry on the same money

8  laundering activity he was involved in before, because the

9  *modus operandi,* I guess, involved the defendant driving to

10  various places to deliver the currency, or the laundered

11  proceeds of narcotics, or to pick up whatever goods or other

12  items that were used as part of this illegal activity.

13      MR. GOLD:  (Indicating.)

14      THE COURT:  What did you want to say, Mr. Gold?

15      MR. GOLD:  I forgot to ask.  My correction,

16  Your Honor.  The suretor who would be his employer is the

17  car suretor.

18      THE COURT:  Okay.

19      MR. GOLD:  The other suretors, both suretors, have

20  nothing to do with the business.

21      THE COURT:  Okay.

22      All right.  So, Ms. Carlson, do you have any view

23  and how has the defendant's compliance been the last -- what

24  has it been, year -- oh, much less than a year, I'm sorry.

25  It's only been since May or thereabouts.

1      MS. CARLSON:  Since his release, the defendant has

2   been compliant, Your Honor.  And for the record, at the

3   initial appearance on the bail report, Pretrial Services did

4   not recommend location monitoring; therefore, we would have

5   no objection to that.

6          However, we would prefer that the defendant not be

7   on a standalone monitoring type of location monitoring.  The

8   reason being that it's just very difficult for

9   Pretrial Services to monitor someone who has free rein of

10  four states and really understand where someone's going, and

11  what locations are troublesome and what locations aren't

12  troublesome.  It's just something we would prefer not to do.

13  That is the point of the curfew.  It's to ensure that

14  they're at their home and they are not out late at night to

15  do these types of things.

16         But for the record, we did not recommend location

17  monitoring at the initial hearing.

18         THE COURT:  Right.

19         Let me ask you, Mr. Navarro, the indictment I

20  think in the complaint, both charge the defendant with

21  engaging in this money laundering activity for about eight

22  months, between August 2018 and April 2019.  Do you have any

23  information or evidence to suggest he was doing it for a

24  longer period of time?

25         MR. NAVARRO:  Yes, Your Honor.  The DEA -- the

1    charges in the complaint are limited to when the undercover

2    transactions began and when they ended, Your Honor.  But

3    based on his conversations on recorded -- excuse me -- based

4    on his recorded statements to DEA agents, he has been

5    involved in money laundering before.  He has had partners

6    involved.  For example, he spoke about a partner who was

7    arrested for dealing with drug dealers as well.

8              THE COURT:  Okay.

9              MR. NAVARRO:  So there are the money laundering

10   transactions that were not done with the DEA.

11             THE COURT:  Okay.  And the way this business would

12   work is that the defendant would go collect the money that

13   needed to be laundered and then convert it into some other

14   currency?

15             MR. NAVARRO:  The way it would work, Your Honor,

16   is he would do both ends.  So he would both pick up cash and

17   convert it to Bitcoin.

18             THE COURT:  Okay.

19             MR. NAVARRO:  And then do the opposite, receive

20   Bitcoin and convert that to cash.

21             THE COURT:  All right.  I have to tell you,

22   Mr. Gold, I have so real problems with the proposed

23   modification, because it essentially opens up free rein for

24   the defendant to travel through this four-state area and be

25   able to drive and use the same mode of transportation that

1   he did whenever he was transacting his illegal activity.  So

2   it is really no restriction on him whatsoever.

3           Moreover, he would be specifically allowed to do

4   it late at night when it would be much more difficult to

5   bring any attention or any necessary attention to his

6   conduct.  And as Pretrial Services said, even though he

7   would be monitored, it is kind of meaningless in terms of

8   deterring or detecting any kind of criminal activity because

9   all they would know is that he is traveling to one of the

10  four states he is allowed to travel to.  And in effect, what

11  I hear Officer Carlson saying is they would prefer no

12  monitoring if he is going to be allowed to travel so

13  extensively.

14          I just do not see how this modification, which

15  essentially puts no restrictions on him, would achieve the

16  proper purpose of preventing him from re-offending during

17  this period of time, or at least detecting whether or not he

18  was engaging in illegal conduct of the sort that he was

19  doing before, which involved him traveling extensively to

20  both pick up and deliver laundered proceeds.

21          So I am going to deny this request.  I understand

22  that you have two suretors, but the problem really is one of

23  detection.  It is not so much one of the earnestness of the

24  suretors.  It will be virtually impossible for the

25  Government or Pretrial Services to figure out whether

1    Mr. Goklu is carrying on or resuming his money laundering

2    business if he is allowed to drive everywhere between here

3    and Pennsylvania and Connecticut.

4              If he wants to find employment, he is just going

5    to have to find something local.  If he had a local job that

6    involved nighttime work, I would be a little more open to

7    that modification.  But I am not going to lift the curfew

8    and I am not going to allow him to travel to all of those

9    states.  So he still cannot drive.  He still must remain on

10   curfew from 10:00 p.m. to 9:00 a.m.  If he finds other

11   employment and needs a modification of his bail for that

12   purpose, he can apply.  But he should just look for daytime

13   employment.  There are plenty of jobs to be had in this

14   area.  Okay?

15             So I am going to deny the bail modification

16   request.

17             MR. GOLD:  Thank you, Your Honor.

18             THE COURT:  Okay.

19             We will see you folks in January, and at that

20   time, you will let me know whether we will proceed to trial,

21   and if you have any motions or whether there will be a plea.

22   Okay?  Thank you.

23             Thank you, Officer Carlson, for coming up on short

24   notice.

25             MS. CARLSON:  Thank you, Your Honor.

1          MR. NAVARRO:  Thank you, Judge.

2          MR. GOLD:  Your Honor, may I make just one

3    slight additional request --

4          THE COURT:  Yes, sure.

5          MR. GOLD:  -- if I may?

6          THE COURT:  Sure.

7          MR. GOLD:  It takes him about an hour and a half

8    to get to my office.

9          THE COURT:  Okay.

10          MR. GOLD:  And there has been some difficulty

11    getting advanced approval for office visits, just in terms

12    of timing.  If I may request that he be deemed authorized to

13    come to my office upon my notification two days in advance

14    to the Pretrial without having to wait for Pretrial to get

15    back with that -- where that it's automatically authorized

16    so he can leave his house at 8 o'clock and, you know, get to

17    my office?

18          THE COURT:  That's fine.

19          Where does he live?

20          MR. GOLD:  In Queens.

21          THE DEFENDANT:  In Queens.

22          THE COURT:  Okay.  And your office is downtown?

23          MR. GOLD:  In Midtown Manhattan, I'm in the

24    Empire State Building.

25          THE COURT:  Okay.

1      Officer Carlson, would it suffice if Mr. Gold

2 alerted or notified your office two days in advance of a

3 visit by Mr. Goklu to his lawyer?

4      MS. CARLSON:  That is our general, normal

5 practice, Your Honor.

6      THE COURT:  Without confirmation, though, before

7 he could leave?

8      MS. CARLSON:  We would like to give him

9 confirmation so that we know where he is going.

10      THE COURT:  Right.

11      MS. CARLSON:  But if we have an email from

12 Mr. Gold saying that you have an appointment, you know,

13 that's fine.

14      THE COURT:  All right.  Fine.

15      MR. GOLD:  Thank you.

16      THE COURT:  Fine.  So it doesn't require

17 modification.  That's the operating practice.

18      MR. GOLD:  All right.

19      THE COURT:  So he can go, so long as you notify

20 them.

21      MR. GOLD:  And, in fact, I'm sure I can do it, as

22 I have in the past, longer than two days in advance.

23      THE COURT:  All right.

24      MR. GOLD:  It's just that I haven't gotten

25 confirmations.  But moving forward...

1          THE COURT:  That's all fine.

2          MR. GOLD:  Okay.

3          THE COURT:  All right.  Thank you very much for

4    that.

5          MR. GOLD:  Thank you.

6          THE COURT:  All right?

7          MR. NAVARRO:  Thank you, Judge.

8          THE COURT:  Thanks, everyone.

9          (Matter concluded.)

10

11                        --oo0oo--

12

13

14

15

16    *I (we) certify that the foregoing is a correct transcript*
17   *from the record of proceedings in the above-entitled matter.*

          /s/ David R. Roy              November 10, 2020
18         DAVID R. ROY                        Date

19

20

21

22

23

24

25