

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FJN:GK/MED
F. #2018R01809

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 27, 2023

By ECF and Email

Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Mustafa Goklu
          Criminal Docket No. 19-386 (PKC)

Dear Judge Chen:

  The government respectfully submits this letter in advance of the defendant Mustafa Goklu's sentencing, which is currently scheduled for May 12, 2023 at 12:00 p.m. On October 11, 2022, following a four-day jury trial, the defendant was convicted of money laundering and operation of an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1956(a)(3)(B) and 1960(a), respectively. For the following reasons, the government respectfully submits that a significant sentence within the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range of 51 to 63 months' imprisonment is warranted in this case.

I.  Factual Background

  As proven at trial, in 2018, the defendant utilized an online peer-to-peer cryptocurrency exchange to advertise his cryptocurrency for cash exchange business. The defendant's advertisement informed potential customers that he could purchase up to $99,999 worth of Bitcoin, or "BTC," and convert them into U.S. currency for a fee. Presentence Investigation Report ("PSR") dated March 29, 2023 ¶ 12. The defendant's advertisement directed customers to contact him through an encrypted messaging application. Id.

  In July 2018, Drug Enforcement Administration ("DEA") agents identified the defendant's advertisement. PSR ¶ 12. Subsequently, a DEA agent acting in an undercover capacity exchanged messages with the defendant on an encrypted messaging platform to arrange an in-person exchange of BTC for U.S. currency. From August 2018 through May 2019, the defendant and the undercover agent met seven times, and the defendant exchanged increasing amounts of the undercover agent's BTC into cash, totaling $133,190. Id. ¶ 13. During these

meetings, the undercover agent told the defendant, among other things, that he operated an illegal online marijuana business in California, and that he sold Adderall and Oxycodone to college students. Id. The defendant was arrested by DEA agents on May 6, 2019 while in the process of converting approximately $50,000 of BTC into cash. Id. ¶ 16.

The evidence at trial also established that the defendant operated a money remitting business and had other clients in addition to the undercover agent. PSR ¶¶ 13, 14. For example, the defendant told the undercover agent that he was holding cash for other customers. Additionally, messages recovered from the defendant's cellphone reflect that the defendant met with multiple individuals—many of them repeat customers—who located the defendant through his advertisement for the purpose of exchanging BTC into cash and vice versa. Id. ¶ 14.

Subsequent to the defendant's arrest on May 6, 2019, the defendant voluntarily waived his Miranda rights and spoke with law enforcement agents. PSR ¶ 16. The defendant told law enforcement, in sum and substance, that he had exchanged BTC with other individuals and that he communicated with prospective customers via encrypted messaging applications. Id. A search of the defendant's home and car conducted in parallel to the defendant's arrest yielded a laptop computer and cellular telephone containing records relating to his Bitcoin exchange business, and a money counter. Id.

II.     Procedural History

The defendant was arrested and charged by complaint with money laundering on May 6, 2019, and was indicted on that charge on August 22, 2019. See ECF Nos. 1 & 15. On October 28, 2020, a superseding indictment was returned that charged the defendant with money laundering and operating an unlicensed money remitting business. ECF No. 28. The defendant proceeded to trial on October 3, 2022 and was convicted of both counts charged in the indictment on October 11, 2022. See ECF No. 72.

III.    Legal Standard

A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   (2) the need for the sentence imposed—
>
>       (A) to reflect the seriousness of the offense, to promote respect for

> the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct; [and]
>
> (C) to protect the public from further crimes of the defendant.

Section 3553 also addresses the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). "[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Thus, the Court should first calculate the applicable Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

IV. Guidelines Calculation

A. The Applicable Guidelines Range

The Probation Department ("Probation") has calculated the applicable Guidelines calculation as follows:

| | |
|---|---|
| Base Offense Level (§ 2S1.1(a)(2)) | 16 |
| Plus: Knowledge Laundered Funds Were Narcotics Proceeds (§ 2S1.1(b)(1)) | +6 |
| Plus: Defendant Convicted Under 18 U.S.C. § 1956 (§ 2S1.1(b)(2)(B)) | +2 |
| Total: | <u>24</u> |

PSR ¶¶ 21–36. Based on the defendant's criminal history, which is a Criminal History Category I, the applicable Guidelines range for the defendant is 51 to 63 months imprisonment. PSR ¶¶ 39, 71. The government agrees that Probation's Guidelines calculations are correct.

V. Sentencing Recommendation

The government respectfully submits that a significant custodial sentence within the Guidelines range of 51 to 63 months' imprisonment reflects the seriousness of the defendant's conduct, the need to promote respect for the law, and the need to provide adequate deterrence to the defendant and to others contemplating similar acts. See 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(B).

3

The nature and circumstances of the instant offense—the laundering of what the defendant knew to be narcotics proceeds, thereby facilitating the ability of drug traffickers to distribute narcotics in the United States—is inherently serious and supports a sentence of incarceration. See 18 U.S.C. § 3553(a)(1). Put simply, the drug trade would be less pervasive and less lucrative for drug traffickers if money launderers like the defendant did not enable the illegal and deadly trade. Additionally, the evidence introduced at trial also established that the defendant engaged in numerous BTC exchanges that bore hallmarks of money laundering for other illegitimate transactions, including transactions where his counterparts referenced "washing" proceeds. The evidence also established that the defendant was aware that individuals sought his services to launder the proceeds of illegal activities and took deliberate actions—such as structuring transactions, and conducting the exchanges in his parked car, out of view of cameras and the police—to mitigate against the risk of detection.

The history and characteristics of the defendant also support a significant custodial sentence. The government acknowledges that the defendant had a child after his arrest and that any period of incarceration would pose a hardship for his family. However, the evidence presented at trial reflects a pattern of the defendant engaging in fraudulent conduct. Additionally, the government is concerned about the defendant's respect for court orders. After the defendant's conviction, the government and Probation received information from the defendant's landlord regarding an ongoing dispute wherein the defendant has refused to grant the landlord access to his apartment as required to by the terms of the lease agreement.[1] As a result of the defendant's refusal, the landlord obtained a court order granting her permission to inspect and repair the apartment. Nevertheless, the defendant has, in violation of the court order, continued to deny the landlord the required access to the unit. The government has corroborated the existence of the litigation, captioned O'Neill v. Gokly, Index No. 700123/2023 (N.Y. Sup. Ct. Queens Cnty.). Further, throughout this prosecution, the defendant has expressed no remorse or otherwise accepted responsibility for the unlawful nature of his actions. A significant custodial sentence would thus provide specific deterrence for the defendant, as well as fulfill general deterrent aims for this serious conduct. See 18 U.S.C. § 3553(a)(2)(A), (a)(2)(B).

---

[1] The landlord informed the government and Probation that she is attempting to inspect and repair the unit in order to sell it.

VI. Conclusion

For the foregoing reasons, the government respectfully submits that a significant custodial sentence within the applicable Guidelines range of 51 to 63 months' imprisonment is appropriate in this case.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Gillian Kassner
Marietou Diouf
Assistant U.S. Attorneys
(718) 254-7000

cc: Counsel of Record (by ECF)
Jaime L. Turton, U.S. Probation Officer (by email)